UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br>        Plaintiff,<br>   v.<br>SCHURMAN,<br>        Defendant. | Case No. 21-cr-00234-VC-1<br><br>**RESTITUTION ORDER** |

      Peter Schurman pleaded guilty to one count of mail fraud under 18 U.S.C. § 1341. Having previously sentenced Schurman to five years of probation, the Court now orders payment of restitution to the victims in the following amounts: $12,270 to J.F.; $28,583 to J.B.; and $7,905 to the City and County of San Francisco.

      The most significant issue discussed in this opinion is whether a victim can obtain restitution for their own remediation work following an offense against their property. The government takes the position that such efforts cannot be the basis for restitution, and the defendant adopts the government's arguments. The Court disagrees: Provided that all the statutory requirements are met and the victim's work is valued properly, that work can be the subject of restitution.

**I**

      Between May 2015 and October 2019, Peter Schurman sold dozens of fraudulent inspection reports to property owners in the San Francisco area. Municipalities require property owners undertaking construction projects to submit these inspection reports as confirmation that work has been done in compliance with local building codes and any issued permits. On

letterhead from the engineering firm where he used to work, Schurman forged the signatures of certified civil engineers and used their official stamps and identification numbers. Unbeknownst to the property owners, no inspections had ever occurred. The fake reports were submitted to the San Francisco Department of Building Inspection and other local authorities, which relied on them in issuing final approvals.

After Schurman's fraud was discovered, the approvals were revoked and property owners had to obtain new, non-fraudulent inspection reports. But because construction work had already finished, it was not always a simple matter of a real inspector stopping by the properties. At least one property required demolition work and reconstruction for an inspection to be completed.

Schurman pleaded guilty to mail fraud and the Court sentenced him to five years of probation. As part of the plea agreement and as required by statute, Schurman agreed to pay restitution to his victims. Two individual victims, J.F. and J.B., sought restitution, as did the San Francisco Department of Building Inspection. The Court heard argument and the parties agreed that the Court could issue a written ruling specifying the amount of restitution. As that amount was not ascertainable before sentencing, this order is entered within 90 days under 18 U.S.C. § 3664(d)(5).

## II

Restitution must be authorized by statute. *United States v. Brock-Davis*, 504 F.3d 991, 996 (9th Cir. 2007). The Mandatory Victims Restitution Act requires courts to order restitution for certain offenses when there is an identifiable victim. 18 U.S.C. § 3663A(a)(1). One such category is "offense[s] against property" under Title 18, "including any offense committed by fraud or deceit." *Id.* § 3663A(c)(1)(A)(ii). The statute does not define what constitutes an "offense against property," but the Ninth Circuit has adopted a broad reading of the phrase: It covers all crimes that infringe a victim's property interest. *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014). Physical damage to property is not necessary so long as there is a pecuniary loss. *Id.* at 1065–66.

To qualify as a victim under the MVRA, a person must have been "directly and

proximately harmed" by the offense. 18 U.S.C. § 3663A(a)(2). For an offense that has as an element a "scheme, conspiracy, or pattern of criminal activity," a person directly harmed by the scheme may also receive restitution for harm stemming from related conduct for which the defendant was not convicted. *Id.*; *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999). Mail fraud is one such offense. 18 U.S.C. § 1341.

When the offense and victim are within the scope of the MVRA, the amount of restitution is further limited in at least three ways. First, restitution is compensatory, not punitive, so it is limited to actual losses. *United States v. Rodrigues*, 229 F.3d 842, 845 (9th Cir. 2000).[1]

Second, victims may only receive restitution for harm directly and proximately caused by the offense or scheme. 18 U.S.C. § 3663A(a)(2). The harm must be the "direct and foreseeable result." *United States v. Cummings*, 281 F.3d 1046, 1052 (9th Cir. 2002). Losses incurred in the course of a criminal prosecution are the direct result of the prosecution, not the offense, and therefore do not meet this requirement. *United States v. Phillips*, 367 F.3d 846, 863 (9th Cir. 2004). Nor do lost business opportunities, which are not a direct loss because the victim lacks a vested property interest in such opportunities. *Rodrigues*, 229 F.3d at 846. But costs incurred remediating the effects of an offense can be direct and foreseeable. *United States v. De La Fuente*, 353 F.3d 766, 773 (9th Cir. 2003) (affirming restitution for a hazmat response to an anthrax hoax).

Third and finally (at least as relevant here), the MVRA's text enumerates mandatory methods of calculating losses. 18 U.S.C. § 3663A(b). For offenses resulting in damage to property, the amount of restitution is calculated by taking the value of the property (either on the date of the damage or the date of sentencing, whichever is greater) and subtracting the value of any property returned. *Id.* § 3663A(b)(1)(B). Recognizing that "these calculation instructions are

---

[1] The restitution in *Rodrigues* was based on the Victim and Witness Protection Act, a precursor to the MVRA. Restitution under the VWPA was discretionary, not mandatory, and courts were required to consider the defendant's economic circumstances. The statutes are otherwise essentially identical, and courts may rely on VWPA cases when interpreting the MVRA. *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir. 2004).

not easy to apply where property is rendered temporarily unusable, rather than completely destroyed or permanently damaged," the Ninth Circuit has held that courts may calculate property damage using the costs incurred in responding to or cleaning up from a crime. *De La Fuente*, 353 F.3d at 773 n.6 (where an anthrax hoax letter had burst open in a mail room, "the district court's only practical option was to order [the defendant] to pay the cost of ensuring that the mail room was in the same condition as just prior to the time it became unusable"). Other circuits have come to the same conclusion. *United States v. Sharp*, 927 F.2d 170, 174 (4th Cir. 1991) (affirming repair costs under analogous language in 18 U.S.C. § 3663(b)); *United States v. Quillen*, 335 F.3d 219, 226 (3d Cir. 2003). *But see United States v. Mitchell*, 876 F.2d 1178, 1184 (5th Cir. 1989) ("There is no provision authorizing restitution for . . . [the] cost of restoring property to its pre-theft condition[.]").

### III

#### A. Restitution to J.F.

Schurman is ordered to pay J.F. a total of $12,270 in restitution. This amount includes $6,750 that J.F. paid Schurman for the fraudulent inspection reports and $5,520 that J.F. spent on real reports after the fraud was discovered. At the restitution hearing, Schurman confirmed he does not contest either the amount of these costs or that they are recoverable under the MVRA.

#### B. Restitution to J.B.

Schurman is ordered to pay J.B. a total of $28,583 in restitution. This amount includes $2,650 that J.B. paid to Schurman for the fraudulent inspection reports and $16,683 in additional out-of-pocket costs incurred to remediate the fraud, such as costs for demolition and repair work by contractors. Schurman does not contest the amount or propriety of these aspects of the award, and the government agrees he should pay this amount. But, on top of these costs, J.B. also sought restitution for his own work overseeing and coordinating the remediation project. The government and Schurman both dispute his eligibility for restitution based on these efforts.

Under the MVRA, a victim's own work is not categorically excluded from restitution. Nor is such work categorically included. Rather, when a victim's work meets all the

requirements of the MVRA, restitution for the value of that work is both appropriate and required. That is the case here: J.B.'s work remediated an actual loss. The need for that work was directly and proximately caused by Schurman's scheme. And the value of those efforts can be appropriately calculated under the statute.

If J.B. had hired a professional to supervise the remediation project, everyone agrees he could be reimbursed for that out-of-pocket expense. But the government takes the position that a victim's own efforts cannot count as an actual loss because they are not realized in the form of a cut check. Under this theory, by doing the work himself, J.B. did not incur an actual pecuniary loss and cannot recover. But the case law on the actual-loss requirement stands only for two unremarkable propositions. First, restitution is meant to make victims whole, not enrich them. *See Rodrigues*, 229 F.3d at 845. Second, the losses must be actually caused by the defendant's conduct. *United States v. Peterson*, 538 F.3d 1064, 1075 (9th Cir. 2008). Neither principle prevents a victim's work from being an actual loss under the statute.

The word "pecuniary" appears in section 3663A(c)(1)(B), which limits the statute to offenses in which "an identifiable victim or victims has suffered a physical injury or pecuniary loss." Section 3663A(c)(1) defines the offenses covered, not the measure of restitution, so it is not evident that the word "pecuniary" limits the scope of restitution so long as the victim has indeed suffered pecuniary harm (which is undisputed here). But in any event, restitution for the value of J.B.'s work *does* compensate him for a pecuniary loss. J.B.'s property was reduced in value by Schurman's scheme. If J.B. had sold the property after his permit had been revoked, the sale price would have been discounted by the cost of remediating the fraud. Instead of selling the property, J.B. remediated the effects of the fraud by paying various contractors and performing some remediation work himself. When a given pecuniary harm can be addressed in various ways, the statute does not distinguish between different methods of remediation. The requirement of actual harm means J.B. cannot recover more than the value of his loss, but it does not mean that he was forced to choose between outsourcing the work or foregoing restitution.

Two Ninth Circuit cases support this proposition. In *United States v. Sablan*, a bank was

permitted to recover restitution based on time its employees spent fixing computer files that were damaged as a result of the defendant's computer fraud. 92 F.3d 865, 869–70 (9th Cir. 1996). And in *Brock-Davis*, a motel owner was permitted to recover restitution based on the time he and his employee spent cleaning up a room that the defendant used as a meth lab. 504 F.3d at 995.

The government's only response to these cases is this: In *Sablan* and *Brock-Davis*, restitution was appropriate because a company was paying its employees (or its owner) to remediate the effects of a crime, but here J.B. was not paying anybody for his own work. That distinction is both meaningless and absurd. It would mean that a company's efforts to remediate a property crime against it would be eligible for restitution because someone is always paid to do the remediation work, while an actual person doing the same work on their own behalf would be out of luck because there is no transaction. Both parties admit this result would be totally unfair. Fortunately, they are mistaken in thinking the statute and case law require it.[2]

The government invokes a provision in a different statute—the general statute governing discretionary restitution—in support of its argument that the MVRA precludes restitution for work by the victim (unless it's a company) remediating the effects of a crime. That provision specifies that identity theft victims can be compensated for their time spent dealing with the effects of the theft. 18 U.S.C. § 3663(b)(6). It was apparently added in response to the difficulty courts encountered in determining when such victims' losses were proximately caused by the identity theft. *See, e.g.*, *United States v. Havens*, 424 F.3d 535, 539 (7th Cir. 2005) (explaining that an identity theft victim may be compensated for some of her time, but not all of it); *United States v. Garcia*, 478 F. Supp. 2d 1333, 1335-39 (D. Utah 2007) (collecting cases). According to the government, this explicit authorization to compensate a victim's time in an adjacent statute

---

[2] In a previous order, the Court observed that at least one district court appeared to have held that a victim's lost time may never, as a categorical matter, be compensated in a restitution order. Dkt. No. 54 at 2 n.1 (citing *United States v. Garcia*, 478 F. Supp. 2d 1333, 1334 (D. Utah 2007)). But *Garcia* concerned the bar on recovering consequential losses, not a special rule for a victim's time. *See Garcia*, 478 F. Supp. 2d at 1336–39. In any event, if the *Garcia* court did hold that time is categorically excluded from restitution, that conclusion would be wrong for the reasons discussed in this ruling.

militates against reading a similar authorization into the MVRA as it relates to property crimes.

But that provision does not change the general rule that if a victim's losses were directly and proximately caused by the crime, the defendant must pay restitution for them. Courts did their best to draw the proximate causation line in the identity theft context, and Congress responded by letting courts simply compensate victims for all of their time in those cases. It does not follow that a property-crime victim's work can never be the basis of restitution.

And in J.B.'s case, the need for his work was the direct and proximate result of Schurman's offense. But for the fraud, J.B. would not have needed to manage a new construction project. And given the fraud, the remediation work was necessary. While the situation was less dire than the apparent anthrax attack in *De La Fuente*, J.B. had no choice but to obtain a non-fraudulent inspection report. His work was a necessary part of remediating the property damage caused by Schurman's fraud, regardless of whether it was performed by J.B. or a hired professional, and it is just as directly and proximately caused as J.B.'s out-of-pocket expenses.

Schurman makes one further, overarching argument regarding the legal eligibility of J.B.'s own work. In every case, he says, a victim spends some amount of time and effort remediating harm, and so approving restitution here will flood the courts with similar requests. But the limitations built into the statute protect against that, and will often clearly preclude an award of restitution based on a victim's work or time. Some victims will not be able to show actual harm. Other victims' efforts will be directed to harms not directly and proximately caused by the offense (as in many identify theft cases before the addition of section 3663(b)(6)). In still other cases, the value of the efforts will not be susceptible to calculation. Indeed, the issue presented here might be limited to cases where a victim personally remediates property damage in lieu of hiring a professional. In any case, victims who meet the statutory requirements are entitled to restitution. Concern about making too many victims whole is not a good reason to deny restitution here.

Regarding the appropriate amount of restitution, J.B.'s initial victim impact statement requested $40,000 for his time managing the fallout of Schurman's fraud. That number was

based on an estimated 100 hours of work and J.B.'s former rate of $400 per hour as a practicing attorney. In a prior ruling, the Court rejected this method of calculating the restitution amount because the restitution is for the value of J.B.'s work, not the general value of his time. Dkt. No. 54 at 2. As that ruling explained, the correct way to calculate the value of those efforts is to determine what it would have cost J.B. to pay someone to perform the same work. *Id.*

In response, J.B. contacted two architecture firms and filed a supplemental letter requesting restitution based on what he learned from them. One firm charges between $185 and $200 per hour; the other charges $285 per hour. The first firm was familiar with J.B.'s overall project, having served as the architect. Both firms estimated they would have spent 50 to 100 hours doing the work J.B. did.

Schurman challenges this showing as insufficient. It is borderline, to be sure. However, it is sufficient to support an award of restitution on the low end of the range of estimates provided by the firms.[3] Both architecture firms estimated at least 50 hours, including one firm that was already familiar with the project. Both firms gave numbers reasonably consistent with J.B.'s own estimate of 100 hours. The other victim, J.F., noted in his statement that he spent at least 100 hours on his own remediation project (though J.F. did not request restitution for his work). These four data points are sufficient to conclude that, more likely than not, the work required at least 50 hours to complete. And the two firms' hourly rates are sufficient to conclude that the rate for such work is at least $185 per hour, the lowest rate quoted. Thus, an additional $9,250 is warranted for J.B., for a total restitution award of $28,583.

### C. Restitution to San Francisco

Schurman is ordered to pay the City and County of San Francisco $7,905 in restitution. Schurman's reports were provided to the San Francisco Department of Building Inspection, which relied on them in issuing approvals. When Schurman's fraud was discovered, those

---

[3] The government appeared to concede at the hearing that the evidence supported this measure of the value of J.B.'s work (without conceding that the work qualified for restitution under the statute).

approvals had to be rescinded and the City had to do additional work to ensure the properties complied with applicable codes. Some of the department's costs—$3,633.30—were incurred in relation to the properties covered by Schurman's plea agreement. The remainder of the restitution is related to other properties for which he had submitted reports. The department calculated its losses by multiplying the 50 hours spent by the inspection rate of $158.10 per hour set by ordinance. San Francisco Building Code § 110A tbl.1A-D. This restitution does not include legal or investigative fees related to the City's pending civil case.

Nothing in the MVRA precludes the government from receiving restitution as a victim of an offense. *Phillips*, 367 F.3d at 863–64 (holding that the EPA can recover site investigation costs "if they are not routinely incurred prosecuting criminal cases"); *United States v. Salcedo-Lopez*, 907 F.2d 97, 99 n.2 (9th Cir. 1990) ("When the government loses money as the direct result of an offense, it is as entitled to restitution [under the VWPA] as any other victim of an offense."). The department suffered actual losses that were directly and proximately caused by Schurman's offense. *See De La Fuente*, 353 F.3d at 768, 774 (affirming restitution to the United States Postal Service for employee work hours lost due to an anthrax hoax); *United States v. Hand*, 863 F.2d 1100, 1105 (3d Cir. 1988) (affirming restitution under the VWPA for salaries of DEA agents whose testimony at a criminal trial was wasted after the defendant's misconduct as a juror caused a mistrial); *cf. Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020) (explaining that "the cost of [city] employees' services would qualify as an economic loss to a city" in a hypothetical fraud scheme). Finally, calculating the losses according to the statutory rate for department inspections is in accord with *Sablan*, where the Ninth Circuit affirmed restitution to a bank for its employees' time that had been calculated using the rate charged to the bank's customers. 92 F.3d at 869–70.

As a general matter, most government activity after a crime will not be eligible for restitution under the MVRA. The costs of criminal investigations and prosecutions cannot be recovered, and any activities in the normal course of government business are not the direct and foreseeable result of an offense. Here, the department's work was not routine: Inspectors

9

reviewed the previous approvals that had been predicated on the fraudulent reports, set criteria for special inspections and testing of the affected properties, considered new reports against those criteria, and finally conducted their own inspections. Where an offense covered by the MVRA is the direct and proximate cause of non-prosecution work that would otherwise be unnecessary, restitution is both authorized and required. That is the case here.

## IV

Accordingly, the defendant, Peter Schurman, is ordered to pay restitution in the amount of $12,270 to J.F., $28,583 to J.B., and $7,905 to the City and County of San Francisco.

**IT IS SO ORDERED.**

Dated: October 7, 2022

_____
VINCE CHHABRIA
United States District Judge